United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BENSON, *et al.*, | No. C-09-5272 EMC |
| Plaintiffs, | |
| | RELATED ACTION |
| v. | |
| JPMORGAN CHASE BANK, N.A., | No. C-09-5560 EMC |
| Defendant. | |
| _____/ | **ORDER DENYING DEFENDANT'S MOTIONS TO TRANSFER VENUE** |
| JOHN ALEXANDER LOWELL, *et al.*, | |
| Plaintiffs, | **(Docket No. 11 in C-09-5272)** <br> **(Docket No. 19 in C-09-5560)** |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |
| _____/ | |

The Court has related the above-referenced cases. In both class actions, Plaintiffs[1] have filed suit against Defendant JPMorgan Chase Bank, N.A. individually and as a successor in interest to Washington Mutual, Inc. ("WaMu"). According to the complaints, which are substantially the same, WaMu and JPMorgan aided and abetted a Ponzi scheme. Currently pending before the Court are JPMorgan's motions to transfer the related cases.

---

[1] For convenience, the Court refers to the plaintiffs in the *Benson* case and the plaintiffs in the *Lowell* case as "Plaintiffs" collectively.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court hereby **DENIES** the motions to transfer.

## I.  FACTUAL & PROCEDURAL BACKGROUND

As alleged in Plaintiffs' complaints, three nonparties -- William Wise, Jacqueline Hoegel, and Kristi Hoegel -- were responsible for setting up a Ponzi scheme pursuant to which fraudulent certificates of deposit ("CDs") were sold to Plaintiffs and other innocent purchasers. Plaintiffs maintain that a Napa branch of WaMu knew of and facilitated the Ponzi scheme and that, after JPMorgan acquired WaMu, JPMorgan did the same. Currently pending before the Court are JPMorgan's motions to transfer the cases to the Northern District of Texas.

Two lawsuits have been filed in the Northern District of Texas related to the Wise/Hoegel Ponzi scheme: (1) *United States Securities & Exchange Comm'n v. Millennium Bank*, No. C-09-0050-O (N.D. Tex.), and (2) *Litson-Gruenberg v. JP Morgan Chase & Co.*, No. C-09-0056-O (N.D. Tex.).

The first action was filed by the Securities and Exchange Commission ("SEC"). According to the agency, Mr. Wise and the Hoegels, as well as other entities and persons affiliated with them, violated federal securities laws by setting up and operating the Ponzi scheme. A receiver was appointed in that action to prevent waste and dissipation of the assets of the defendants. As of this date, the SEC action is still ongoing.

The second action -- a class action -- was initiated by a private individual. The plaintiff therein sought to represent a class consisting of those who had invested in the alleged Ponzi scheme which was the subject of the SEC action. The plaintiff did not sue any of the persons or entities who were direct participants in the alleged Ponzi scheme (because the Northern District of Texas court had enjoined private actions against those parties), but rather sued only JPMorgan -- "the bank which not only turned a blind eye to the obviously illegal activities being carried out with its complicity and facilitation, but even knew of those activities, provided the wrong doers with substantial assistance, and profited therefrom." *See* Docket No. 15 (RJN, Ex. 9) (FAC ¶ 2). In the first amended complaint ("FAC"), the plaintiff asserted claims for, *inter alia*, aiding and abetting

breach of fiduciary duty and aiding and abetting fraud.  In December 2009, the Northern District of Texas court granted JPMorgan's motion to dismiss the FAC with prejudice.  *See* Docket No. 15 (RJN, Ex. 10) (order).  No appeal was taken from the final judgment.  Accordingly, the *Litson-Gruenberg* case is now a closed case.

## II.  DISCUSSION

In its motions, JPMorgan argues that this Court should transfer the two related cases pending before this Court to the Northern District of Texas (1) based on the doctrine of federal comity and/or (2) pursuant to 28 U.S.C. § 1404.  Each of these arguments is addressed below.

A.     Transfer Based on Federal Comity

The doctrine of federal comity, or first-to-file rule, permits a district court to dismiss, stay, or transfer an action:

> when a complaint involving the same parties and issues has already been filed in another district.  Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).  The principle underlying the federal comity doctrine is "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Pacesetter*, 678 F.2d at 94-95 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).  "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."  *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).

As a general matter, in deciding whether to apply the first-to-file rule, courts look to three factors: (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues.  *See Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994).  However, the Ninth Circuit has emphasized that the "'first to file' rule is not a rigid or inflexible rule to be mechanically

3

applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95.

### 1. *Litson-Gruenberg* Case

In its papers, JPMorgan argues first that there should be a transfer of the pending class actions to the Northern District of Texas based on the *Litson-Gruenberg* case which has been litigated there.

There is no dispute that the instant cases were filed after *Litson-Gruenberg*. Moreover, although Plaintiffs argue otherwise, it is clear that the parties in the pending class actions are, in essence the same, as those in the *Litson-Gruenberg* action. The fact that the class representative in *Litson-Gruenberg* is different from the class representatives in the pending actions is immaterial. "In a class action it is the class, not the representative that is compared." *Weinstein v. Metlife, Inc.*, No. C-06-04444 SI, 2006 WL 3201045, at *4 (N.D. Cal. Nov. 6, 2006). In both the *Litson-Gruenberg* class action and the class actions here, the classes are substantially the same if not identical -- *i.e.*, those persons who were defrauded by the alleged Ponzi scheme set up and operated by Mr. Wise and the Hoegels. *See, e.g.*, *Intersearch Worldwide v. Intersearch Group, Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) (concluding that parties in different actions were "sufficiently identical"). As for the defendants in the *Litson-Gruenberg* case and the defendant here, as a technical matter, they are different. In *Litson-Gruenberg*, the defendant was J.P. Morgan Chase & Co.; here, the defendant is a subsidiary. But this difference is inconsequential because both defendants represent the same interests and thus are sufficiently similar for purposes of federal comity. *See Weinstein*, 2006 WL 3201045, at *4 (in a class action involving a corporation and its subsidiaries, holding that the fact that there were additional, different defendants was not dispositive because defendants represented the same interests).

The critical issue therefore is whether the same or sufficiently similar issues will be litigated here as in the *Litson-Gruenberg* case. The test for determining whether issues are sufficiently similar is "whether . . . the two pending actions [are] so duplicative or involve substantially similar issues that one court should decide the issues . . . . The issues need not be identical . . . but there

must be 'substantial overlap between the two suits.'" *Intersearch Worldwide*, 544 F. Supp. 2d at 959-60.

There is, without a doubt, similarity in the underlying background information between the pending actions here and in *Litson-Gruenberg*. Even so, there are important differences between the cases. In *Litson-Gruenberg*, the plaintiff focused on WaMu's alleged atypical banking procedures as a basis for liability -- *e.g.*, WaMu's failure to establish and enforce a Banking Secrecy Act/Anti-Money Laundering compliance program, to apply proper Customer Identification procedures to the UT of S account, to perform Customer Due Diligence with respect to the UT of S account, and to report suspicious activities. *See, e.g.*, Docket No. 15 (RJN, Ex. 9) (FAC ¶¶ 41-54, 99, 106). The gravamen of the complaint was WaMu's omissions. In the class actions pending here, Plaintiffs' case for liability is predicated not just on omissions but also on WaMu's affirmative steps in facilitating the Ponzi scheme, such as setting up remote banking systems for entities affiliated with Mr. Wise and the Hoegels even after conducting audits of those entities which Plaintiffs herein allege made clear their illegitimate nature. *See* Benson Compl. ¶¶ 67-74; Lowell Compl. ¶¶ 45-51.

To be sure, the remote banking systems are referenced in the *Litson-Gruenberg* complaint as an atypical banking practice, *See* Docket No. 15 (RJN, Ex. 9) (FAC ¶ 51). Also, in both the *Litson-Gruenberg* complaint and the complaints here, there is some discussion of the fact that the face of third party checks given to Mr. Wise and the Hoegels indicated the third parties were purchasing CDs, even though Mr. Wise and the Hoegels and the entities affiliated with them were not registered to sell securities. *See* Docket No. 15 (RJN, Ex. 9) (FAC ¶ 53); Benson Compl. ¶ 52; Lowell Compl. ¶ 34. However, the focus on the cases before this Court is on the particular nature of the relationship between Defendants and the Napa WaMu branch and its key employees who by virtue of the small size of the branch and personal relationships played an active and central role in facilitating the Ponzi scheme. Hence the operative facts which underlay the aiding and abetting claim in the cases at bar are materially different from those alleged in *Litson-Gruenberg*.

As noted above, the Ninth Circuit has emphasized that the "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95. Wise judicial administration would

counsel in favor of a transfer if judicial resources would be conserved or if inconsistent judgments would be avoided. *See Church of Scientology of Cal.*, 611 F.2d at 750. Here, judicial resources would not be conserved if the Court were to transfer the actions to the Northern District of Texas. The *Litson-Gruenberg* case has been a closed case since December 2009. It did not advance beyond the early pleading stage as the Texas court granted the motion to dismiss under Rule 12(b)(6). As to that motion, because the operative facts alleged herein are materially different from *Litson-Gruenberg*, there is no real danger of inconsistent judgments were this Court to deny the motion to dismiss. The facts alleged herein state a stronger claim than in *Litson-Gruenberg*.

Accordingly, the Court finds that the *Litson-Gruenberg* action is not a basis upon which to transfer the pending actions to the Northern District of Texas.

2. <u>SEC Action</u>

As for the SEC action, the Court also finds that it is not a basis upon which to transfer. First the parties are not sufficiently the same. In the SEC action, the plaintiff is the SEC, not private individuals as here. Moreover, JPMorgan, the defendant in the instant cases, is not a defendant in the SEC action. Rather the defendants in the SEC action are the direct participants in the alleged Ponzi scheme.

Second, the issues are not substantially similar. Although the alleged Ponzi scheme is relevant to both the SEC action and the pending actions and there is some potential overlap since establishment of the Ponzi scheme is a predicate to WaMu's aider and abettor liability, the focus on this case is likely to be on WaMu's role, not wrongdoing by the Ponzi perpetrators. Indeed, in the SEC action, there does not appear to be any serious defense mounted by the alleged Ponzi perpetrators. It appears that a receivership has been installed, and the focus of that case is the preservation of assets of the participants in the alleged Ponzi scheme.

Third, wise judicial administration does not counsel in favor of a transfer. The SEC action was filed less than one year ago. *See* Docket No. 15 (RJN, Ex. 2). It does not appear that the Texas court has expended significant time or resources in adjudicating merits of the SEC action. Most of the orders issued by the Texas court were orders granting preliminary injunctions to freeze the defendants' assets and orders approving the procedures to liquidate those assets. *See* Docket No. 15

(RJN, Ex. 2). JPMorgan has not shown that keeping the two class actions in this District would replicate the work already done by the Texas court.

B.  Section 1404 Transfer

As indicated above, JPMorgan also argues that the pending class actions should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404. Section 1404(a) provides that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose underlying the statute is to "prevent the waste of 'time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Accordingly, courts have generally considered the following factors in determining whether a transfer is appropriate: the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses, the ease of access to evidence, the local interest in deciding the action in the original forum, the familiarity of each forum with the applicable law, and any additional factors relating to the interest of justice. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Milton v. Trueposition, Inc.*, No. C08-3616 SI, 2009 WL 323036, at *2 (N.D. Cal. Feb. 9, 2009). When moving to transfer an action, the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," meaning there is a presumption in favor of plaintiff's choice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Rare Breed Distilling v. Heaven Hill Distilleries*, No. C09-04728, 2010 WL 335658 EDL, at *2 (N.D. Cal. Jan. 22, 2010) (citing *Decker Coal Co. v. Commonwealth Edison Co.*).

1.  Proper Venue, Personal Jurisdiction, and Subject Matter Jurisdiction

As a preliminary matter, the Court notes that a transfer to the Northern District of Texas is permissible only if it is a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). That is, the Northern District of Texas must have subject matter jurisdiction over the instant case, the Northern District of Texas must have personal jurisdiction over JPMorgan, and venue must be proper in the Northern District of Texas.

Clearly, the Texas court -- like this Court -- would have subject matter jurisdiction. There is diversity of citizenship between at least one class member and JPMorgan, and the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2)(A) (providing that a "district court shall have original jurisdiction of any civil action in which the matter in controversy exceeds $5,000,000 and . . . is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant"); Benson Compl. ¶ 20; Lowell Compl. ¶ 23.

As for personal jurisdiction, JPMorgan has conceded that it is authorized to do business and does conduct business in Texas, and Plaintiffs have made no argument that these contacts with the state are insufficient to give rise to personal jurisdiction. *See* Mot. at 6 n.2; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 476 (1985) (a party that has established minimum contacts in the forum state and has purposefully availed itself of the benefits and protections of that state's laws is subject to personal jurisdiction in that state).

Finally, venue would be proper in the Northern District of Texas because, as indicated above, there seems to be no dispute that JPMorgan is subject to personal jurisdiction there. *See* 28 U.S.C. § 1391(c) ("For purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction").

In sum, there is an adequate showing that Plaintiffs' class actions could have been brought in the Northern District of Texas, and therefore the Court examines the convenience and interest-of-justice factors identified above to determine whether the pending class actions should be transferred.

2. Convenience and Interest-of-Justice Factors

The factors identified above largely weigh against a transfer to the Northern District of Texas. For example, Plaintiffs' choice of forum is California, not Texas, and accordingly that choice must be given some weight, even though the pending cases are class actions. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting that, "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight"). In addition, there is no indication that Texas would be a more convenient forum than California with respect to the parties. None of the parties in the case reside in Texas, including JPMorgan. While JPMorgan does business in Texas, it

1  also does business in California, and California is where three of the four plaintiffs in the pending
2  actions live in California.

3     What is most persuasive to the Court, however, is the fact that many of the events at the core
4  of the alleged Ponzi scheme, and WaMu's alleged actions which aided and abetted the scheme,
5  occurred in Napa, California. Because of this fact, California has a strong interest in having the
6  class actions resolved here, California law will likely apply,[2] and relevant evidence -- both
7  documents and witnesses -- will be found in California. Indeed, it appears that several key witnesses
8  reside in California, including the employees of the WaMu Napa branches and the Hoegels. (Mr.
9  Wise was a resident of North Carolina, but at this date his whereabouts are unknown.)

10    In its papers, JPMorgan points out that some evidence is located in Texas, in particular (1)
11  the documents collected by the SEC for the action in the Northern District of Texas and (2) Litzler,
12  Segner, Shaw & McKenney ("LSS&M"), a forensics accounting firm hired for the SEC receivership
13  action. But "the fact that records are located in a particular district is not itself sufficient to support a
14  motion for transfer." *Royal Queentex Enterprises*, No. C99-4787, 2000 WL 246599 MJJ, at *7
15  (N.D. Cal. Mar. 1, 2000). Furthermore, given today's technological advancements, the ability to
16  transfer electronic documents is generally not difficult or burdensome. *See Van Slyke v. Capital One*
17  *Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007) (noting that, "[w]ith technological advances in
18  document storage and retrieval, transporting documents does not generally create a burden").[3]

19    As for LSS&M, while it does appear to reside in Texas, its relevance to the pending class
20  actions is marginal. It is not a percipient witness with respect to the underlying facts. While it may
21  still be called as an expert witness, and though there is generally a preference for live testimony, *see*
22  *Van Slyke*, 503 F. Supp. 2d at 1363-64, there is nothing to indicate that LSS&M could not appear at
23  trial in California. And even if it were, there is nothing to indicate that LSS&M would be beyond
24  the subpoena power of the federal court in Texas for deposition to be used at trial in California. *See*

---

[2] In *Litson-Gruenberg*, the Texas court determined that California law applied. *See* Mot. at 6; Opp'n at 19; *see also* Docket No. 15 (RJN, Ex. 10, at 154).

[3] JPMorgan also concedes that "the Receiver has indicated he not withhold documents properly requested." Mot. at 8.

United States District Court
For the Northern District of California

17 James Wm. Moore, *Moore's Federal Practice*, § 111.13(1)(g) (Matthew Bender 3d. ed. 2009) (noting that, "[a]lthough key witnesses beyond the subpoena power of one of the districts weighs against the action proceeding there, that alone will not prevent [or condone] transfer because their testimony can be introduced by using the witnesses' depositions").

The Court therefore concludes that convenience and the interests of justice weigh in favor of maintaining the class actions here in California instead of transferring them to Texas. In so ruling, the Court acknowledges JPMorgan's point that this District in California has a larger caseload than the Northern District of Texas. *See* Mot. at 8 (asserting that the court in Texas has 325 pending cases per judge whereas this Court has 634). But "relative court congestion is at best, a minor factor in the section 1404 calculus" and "this factor alone cannot control the overall balance." *Royal Queentex Enter.*, 2000 WL 246599, at *8.

### III. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motions to transfer venue.

This order disposes of Docket No. 11 in the *Benson* case and Docket No. 19 in the *Lowell* case.

IT IS SO ORDERED.

Dated: April 7, 2010

EDWARD M. CHEN
United States Magistrate Judge

10