UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BENSON, *et al.*, | No. C-09-5272 MEJ |
| Plaintiffs, | No. C-09-5560 MEJ |
| v. | RELATED ACTIONS |
| JPMORGAN CHASE BANK, N.A., | **ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS** |
| Defendant. | (Docket #47 in 09-5272) |
| | (Docket #54 in 09-5560) |
| JOHN ALEXANDER LOWELL, *et al.*, | |
| Plaintiffs, | |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |

The Court has related the above-referenced cases. In both putative class actions, Plaintiffs[1] have filed suit against Defendant JPMorgan Chase Bank, N.A. ("Chase"), individually and as a successor in interest to Washington Mutual, Inc. ("WaMu"). According to the complaints, which are substantially the same, WaMu and Chase aided and abetted a Ponzi scheme. Currently pending before the Court are Chase's motions to dismiss for lack of subject matter jurisdiction. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and hereby VACATES the August 26, 2010 hearing. Having considered the parties' briefs and

---

[1] For convenience, the Court refers to the plaintiffs in the *Benson* case and the plaintiffs in the *Lowell* case as "Plaintiffs" collectively.

accompanying submissions, relevant legal authority, and good cause appearing, the Court hereby **GRANTS** Chase's motions for the reasons set forth below.

## I. BACKGROUND[2]

As alleged in Plaintiff's complaints, three nonparties – William Wise, Jacqueline Hoegel, and Kristi Hoegel – were responsible for setting up a Ponzi scheme wherein they offered for sale and sold fraudulent certificates of deposit ("CDs") to Plaintiffs and other innocent investors. More specifically, Plaintiffs allege that Mr. Wise and his associates set up various Nevada limited liability corporations ("Nevada LLCs") and then established WaMu accounts for those companies. Plaintiffs allege that WaMu knew of the underlying Ponzi scheme. As evidence of that knowledge, Plaintiffs allege, *e.g.*, the bank knew from the face of investor checks being deposited into the Nevada LLCs' accounts that investors thought they were buying CDs from Mr. Wise, his associates, or the Nevada LLCs and, at the same time, also knew that neither Mr. Wise, his associates, nor the Nevada LLCs were in fact registered to sell securities. Plaintiffs also allege that WaMu knew that all of the investor deposits were being commingled in the same accounts and that the investor funds were not being used to purchase any securities but rather were being wired to offshore bank accounts in names other than the Nevada LLCs or were being used to pay for Mr. Wise and his associates' personal expenses. (Benson Compl. ¶¶ 55, 97; Lowell Compl. ¶¶ 29, 71.)

According to Plaintiffs, WaMu's knowledge of the above came in part from audits that the bank performed prior to the authorization and installation of two remote banking systems for the Nevada LLCs, which enabled Mr. Wise and his associates to make wire transfers to offshore accounts from their offices and also permitted them to deposit investor checks directly from their offices. (Benson Compl. ¶¶ 8, 67, 73, 70; Lowell Compl. ¶¶ 45, 47, 60.) These audits allegedly revealed to WaMu, *inter alia*, the nature of the business conducted by the Nevada LLCs, the industry served by the Nevada LLCs, the financial strength of the Nevada LLCs, the ability of the Nevada LLCs to sell securities, the number of persons employed by the Nevada LLCs, and the

---

[2] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis

2

number and amount of account debits and credits per month for the Nevada LLCs' bank accounts. (Benson Compl. ¶ 70; Lowell Compl. ¶ 47.)

Starting in July 2004, Plaintiffs allege that WaMu Bank was instrumental in launching the scheme by permitting Wise to open the fraudulent accounts without any documentation or registration. (Lowell Comp. ¶¶ 28–29; *see also* Benson Comp. ¶¶ 46 and 48.) Plaintiffs further allege that WaMu Bank "knew that no money was being spent on investments." *Id.* According to Plaintiffs, WaMu Bank purportedly "participate[d] fully in the fraud, including [by] providing both legitimacy and critical banking services to Wise's enterprise that allowed it to thrive and continue defrauding innocent investors for years." (Lowell Comp. ¶¶ 1, 4; Benson Comp. ¶¶ 1, 5.)

According to the Benson Complaint: (a) Plaintiff Neerja Gursahaney purchased a Millennium Bank certificate of deposit in the amount of $4 million in August 2008 (Benson Comp. ¶ 17); (b) Plaintiff Karimdad Baloch purchased a Millennium Bank certificate of deposit in the amount of $119,750 in February 2008 (*id.* ¶ 18); and (c) Plaintiff Kimberly Benson purchased Millennium Bank certificates of deposit totaling $144,000 on May 23, 2006, May 15, 2007, and May 14, 2008 (*id.* ¶ 19).

Plaintiff Lowell does not allege that he purchased certificates of deposit. However, a review of the activity in UTS' account at WaMu Bank, however, reveals deposits of two checks totaling $36,500 executed by a John Lowell made payable to "UT of S/MB" and "UT of S" dated July 23, 2007 and December 21, 2007. (Bowen Decl., Exs. 1, 2.)

In September of 2008, the Office of Thrift Supervision seized WaMu Bank and appointed FDIC as its receiver pursuant to 12 U.S.C. § 1821(c). (Benson Comp. ¶ 7; Lowell Comp. ¶ 6.) On September 25, 2009, the FDIC, as receiver of WaMu, sold to Chase certain of WaMu's assets and liabilities through a Purchase and Assumption Agreement ("PAA"). (Request for Judicial Notice, Exhibit 1, Dkt. #13 in 09-5272.) However, Plaintiffs allege that this scheme continued until March of 2009, when the Securities Exchange Commission ("SEC") commenced an action against Mr. Wise and his associates based on the above-described course of conduct. (Benson Compl. ¶ 75; Lowell Compl. ¶ 52.)

In the pending cases, Plaintiffs have not sued any of the direct participants in the Ponzi scheme. The federal court in Texas where the SEC action is pending has enjoined private actions against those parties. Instead, they have sued only Chase, individually and as WaMu's successor, on the theory that Chase and WaMu knew of and facilitated the Ponzi scheme.

Based on the above allegations, the plaintiffs in the *Benson* case have asserted claims for (1) aiding and abetting fraud; (2) aiding and abetting conversion; (3) aiding and abetting breach of fiduciary duty; (4) conspiracy to commit fraud and conversion; and (5) violation of California Business & Professions Code § 17200 ("UCL"). (Benson Compl. ¶¶ 92-127.) Similarly, the plaintiff in *Lowell* has alleged claims for (1) aiding and abetting fraud; (2) aiding and abetting conversion; and (3) violation of § 17200. (Lowell Compl. ¶¶ 66-88.) Plaintiffs bring their claims against Chase as successor in interest to WaMu.

On December 22, 2009, Chase filed motions to dismiss both complaints pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. #12 in 09-5272; Dkt. #14 in 09-5560.) On April 15, 2010, the Court granted in part and denied in part Chase's motions. (Dkt. #43 in 09-5272; Dkt. #50 in 09-5560.) Specifically, the Court dismissed Plaintiffs' conspiracy claim with leave to amend, but denied the motions with respect to the aiding and abetting and UCL claims. *Id.*

On May 18, 2010, Chase filed the present motions to dismiss pursuant to Rule 12(b)(1), maintaining that the Court lacks subject matter jurisdiction over Plaintiffs' claims. (Dkt. #47 in 09-5272; Dkt. #54 in 09-5560.) On June 23, 2010, Plaintiffs filed a Joint Opposition, (Dkt. #57 in 09-5272), to which Chase filed replies on June 30, 2010 (Dkt. #60 in 09-5272; Dkt. #63 in 09-5560).

### III.   LEGAL STANDARD

Rule 12(b)(1) permits a motion to dismiss based on lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. *Vacek v. UPS*, 447 F.3d 1248, 1250 (9th Cir. 2006). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003). The plaintiff has the burden of establishing that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the

court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## IV. DISCUSSION

In its motions, Chase argues that the Court lacks jurisdiction over Plaintiffs' claims because they relate to alleged acts and omissions of WaMu before it failed and was taken over by the FDIC, relate to the acts and omissions of the FDIC, and seek payment from the assets of the failed bank. Chase contends that any such claims must be brought under the administrative process provided by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), specifically 12 U.S.C. § 1821(d)(13)(D), and that the Court therefore lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs have failed to exhaust their administrative remedies.

In response, Plaintiffs argue that the protections of FIRREA do not extend to Chase since (1) it explicitly accepted the liabilities for the deposit accounts, and (2) FIRREA is designed to protect only the FDIC, against which they assert no claims. Plaintiffs contend that for FIRREA to apply, there must be allegations of impropriety or negligence on the part of the FDIC, and no such conduct is alleged in the instant case. Plaintiffs further argue that Chase cannot prevail because its argument relies on a finding that all of the alleged wrongdoing occurred prior to September 25, 2008, when Chase became WaMu's successor. Plaintiffs contend that this finding is inappropriate at this stage because they allege that Chase's wrongdoing continued until March of 2009.

### A. Jurisdiction Under FIRREA

Under FIRREA, courts lack subject matter jurisdiction to hear a claim against a defunct bank taken into receivership by the FDIC unless the plaintiff has complied with an administrative claims process. *McCarthy v. FDIC*, 348 F.3d 1075, 1077-78 (9th Cir.2003); *Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process"). That process is governed by 12 U.S.C. § 1821(d) and FDIC regulations. Overall, the statute sets up the general structure (claims deadline, FDIC decision within 180 days, and federal suit within 60 days of decision) and states that "The Corporation may prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination." 12 U.S.C.

§ 1821(d)(4)(A). The exhaustion requirement has been interpreted broadly and "applies to any claim or action respecting the assets of a failed institution for which the FDIC is Receiver," and extends to post-Receivership claims arising out of acts by the Receiver as well as the failed institution. *McCarthy*, 348 F.3d at 1081. Thus, if a claimant fails to follow these procedures, "the claim shall be

deemed to be disallowed . . . , such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii).

**B.     Application to the Case at Bar**

Here, the allegations in Plaintiffs' Complaints relate to WaMu and Chase's alleged involvement in the Ponzi scheme. However, the Court finds that Plaintiffs' claims clearly relate to acts and omissions of WaMu as a failed institution under FIRREA. 12 U.S.C. § 1821(d)(13)(D)(ii). Each specific allegation of misconduct occurred in the four years preceding WaMu's failure, starting in 2004 and running through to the bank's seizure in 2008. Thus, the fraud allegedly perpetrated on Plaintiffs occurred, if at all, before WaMu failed. And if WaMu knowingly assisted with that fraud, then its assistance necessarily would have occurred prior to WaMu's failure. Thus, there is no question that Plaintiffs' claims relate to alleged acts and omissions of WaMu before its failure and seizure by the FDIC. *See generally* Lowell Comp. ¶ 1 ("This case involves the unlawful conduct of what was once the largest savings and loan association in the nation, which failed in September, 2008 and was acquired by JPMorgan Chase."); Benson Comp. ¶ 1 ("For over four years, WAMU actively and knowingly participated in the fraudulent activities . . . ."); *see also* Plaintiffs' Opp'n to Mot. to Dismiss, Dkt. #29) at 1 n.1 ("The financial institution that directly carried out the underlying acts set forth in this Complaint was Washington Mutual []. In 2008, WaMu was taken over by the FDIC and sold (assets and liabilitiest) [sic] to JPMorgan Chase, NA."). Plaintiffs' Complaints thus present "claim[s] relating to any act or omission of [WaMu Bank]," over which the Court lacks jurisdiction. 12 U.S.C. § 1821(d)(13)(D)(ii).

The Court further finds that the same holds true for Chase. The only allegation of misconduct by Chase is that the "practices continued after JPMC acquired WAMU in September 2008." (Benson Comp. ¶ 8; Lowell Comp. ¶ 7.) More specifically, Plaintiffs contend that "all of the

key WaMu managers and employees who had knowledge of the Millennium Ponzi scheme and aided and abetted its commission . . . remained JPMorgan officers and managers for the next six months, until the SEC finally shut down the Millennium Ponzi scheme." (Opp'n at 5.) However, the Court finds that the assertion that these employees remained employed after Chase acquired WaMu's assets falls short of transforming Plaintiffs' claims into something other than claims "relating" to WaMu's alleged misconduct. To the contrary, this assertion shows that the claims in the Complaints are predicated on alleged misconduct at the failed bank.

Second, even if the Court were to find that the Complaints include stand-alone allegations of post-receivership misconduct by Chase, FIRREA still applies. The relevant provision entitled "Limitation on Judicial Review" provides that "no court shall have jurisdiction" over the specified claims if FIRREA's claims process is not complied with. This includes "any claim relating to any act or omission of" the failed bank. 12 U.S.C. § 1821(d)(13)(D)(ii). The phrase "relating to" has a deliberately broad and sweeping meaning when used by Congress in a statute. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) ("The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, . . . and the words thus express a broad pre-emptive purpose.'"). FIRREA's jurisdictional bar would be meaningless if a litigant could escape the broad reach of FIRREA by simply peppering an otherwise-barred complaint with allegations against a third party that could not exist as a stand-alone claim. For this reason, courts have not allowed a litigant to avoid FIRREA administrative requirements by adding allegations of misconduct by an assuming bank to complaints predicated on the conduct of the FDIC or the failed bank.

For example, in *American National Insurance Co. v. JPMorgan Chase & Co.*, the plaintiffs made the same argument advanced here — that FIRREA did not apply to their claims against Chase because "their lawsuit seeks damages only from JPMorgan Chase for injuries that were caused only by JPMorgan Chase," including pre-receivership allegations that Chase independently "engineered a campaign involving adverse media 'leaks,' stock sales, and deposit withdrawals" and "disclosed Washington Mutual Bank's confidential information as it saw fit to news media, government regulators, and investors . . . ." *Am. Nat'l Ins. Co. v. JPMorgan Chase & Co., et al.*, No.

1:09-cv-01743-RMC, 2010 WL 1444533, at *3-4 (D.D.C. Apr. 13, 2010).  The court nonetheless held that FIRREA's jurisdictional bar applied because "Plaintiffs' claims against JPMorgan Chase directly 'relate' to an 'act' of the FDIC-Receiver: the agency's 'fire sale' of Washington Mutual Bank's assets.  Having failed to invoke and exhaust this administrative process, Plaintiffs' claims are barred by the Act." *Id.* at *4.  Likewise, Plaintiffs here cannot avoid FIRREA's jurisdictional bar by alleging that Chase "continued" WaMu's misconduct, instead of alleging specific actionable misconduct by JPMorgan Chase.  Plaintiffs' claims are predicated on alleged misconduct at WaMu Bank.  As such, these are claims "relating to any act or omission" of the failed bank and are barred by FIRREA.

Plaintiffs also assert that Chase is liable to them as a "successor in interest" to WaMu.  However, courts have consistently rejected similar attempts to avoid FIRREA's claims process by plaintiffs who bring causes of action against the third party that purchased assets from the receiver.  The plain language of FIRREA broadly applies to (a) "any claim relating to any act" of the failed bank or the FDIC as receiver for such institution," even if the FDIC and failed bank are not named as defendants; and (b) any "action seeking a determination of rights with respect to[] the assets of any depository institution for which the Corporation has been appointed receiver," even if the assets are no longer in the possession of the FDIC.  12 U.S.C. § 1821(d)(13)(D).  Accordingly, courts have consistently held that the plain language of § 1821(d)(13)(D) bars claims "relating" to the acts of the receiver or seeking the assets of the failed bank, even when those claims are asserted against the third-party purchaser of failed-bank assets from the receiver.  *See Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (holding that claims against purchaser of failed-bank assets from the FDIC were barred by 12 U.S.C. § 1821(d)(13)(D)(ii) as "directly related to acts or omissions of the FDIC as the receiver of [the failed bank]"); *DiSibio v. Mission Nat'l Bank*, 127 Fed. Appx. 950, 951, 2005 WL 824106 (9th Cir. 2005) (unpublished) (holding that "[t]he district court properly dismissed [plaintiffs'] claims against [the purchasing bank]" that were based on the failed bank's actions "because they failed to exhaust their administrative remedies before the [receiver]"); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("AFF, having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected

status under FIRREA. . . .   Thus, if Lake Forest is barred [by Section 1821(d)] from asserting this claim against the RTC, it is similarly barred from asserting it against AFF.").

The decision in *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008), is on point.  In that case, the plaintiffs brought claims against a bank that acquired the assets of a failed bank from the FDIC under a Purchase and Assumption Agreement.  The plaintiffs alleged that the assuming bank was the "successor" to the failed bank and that it had aided and abetted the FDIC in its alleged breach of fiduciary duty to the plaintiffs.  *Id.* at 732–33.  The FDIC intervened, and both FDIC and the assuming bank challenged the court's jurisdiction because the plaintiffs had failed to exhaust their administrative remedies.  In response, the plaintiffs argued that FIRREA did not apply because it had brought claims only against the assuming bank, not FDIC.  *Id.* at 734-35.

After a thorough examination of FIRREA, including the language of 12 U.S.C. § 1821(d)(13)(D), the court rejected the plaintiffs' argument:

> The alternative—to permit claimants to avoid the provisions of d(6) and d(13) by bringing claims against the assuming bank—would encourage the very litigation FIRREA aimed to avoid . . . .  The resulting regime would "thwart FIRREA's purpose and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute . . . ."
>
> It would also create an obstacle to the FDIC's quick and successful resolution of failed banks; an assuming bank would rarely be inclined to enter into a Purchase and Assumption Agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future.

*Id.* at 738.

Similarly, in *American National Insurance*, the court held that claims encompassed by FIRREA's jurisdictional bar were required to be submitted in FIRREA's claims process, irrespective of whether the lawsuit was filed against the failed bank, the FDIC, or the third-party purchaser of assets from the FDIC.  The American National plaintiffs, holders of Washington Mutual, Inc. and WaMu bonds, asserted claims against Chase for their investment losses due to WaMu's failure. Although the plaintiffs "argue[d] that their lawsuit [sought] damages only from JPMorgan Chase for injuries that were caused only by JPMorgan Chase," the court recognized that the complaint's allegations "depend on the FDIC-Receiver's sale of Washington Mutual Bank's assets to JPMorgan

Chase." *Am. Nat'l Ins.*, 2010 WL 1444533, at *3. As a result, the plaintiffs "were required to pursue their claims against the FDIC-Receiver administratively through the exclusive receivership claims process that Congress provided in [FIRREA]," which, *inter alia*, "applies to 'any claim relating to any act or omission' of the FDIC as receiver for a failed bank." Id. at *4 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)). The court therefore held that, "[h]aving failed to invoke and exhaust this administrative process, [p]laintiffs' claims are barred by the Act" because the plaintiffs "cannot circumvent the Act's jurisdictional bar by aiming their claims at the assuming bank of the failed bank's assets." *Id.* (citing *Vill. of Oakwood*, 539 F.3d at 386).

Here, Plaintiffs concede that Chase was named as the defendant in these actions because it purportedly is the "successor in interest to Washington Mutual, Inc. and assumed certain assets and liabilities of [Washington Mutual, Inc.], including liability for the claims alleged herein." (Lowell Comp. ¶ 12; Benson Comp. ¶ 21.) As such, Plaintiffs seek to hold Chase responsible for WaMu's alleged misconduct. However, regardless of whom Plaintiffs may name as a defendant, their claims relate to alleged acts and omissions of WaMu, are governed by FIRREA, and are barred.

## V. CONCLUSION

Based on the analysis above, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims and hereby GRANTS Chase's motion to dismiss. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: August 10, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge

10