UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY BENSON, *et al.*, | No. C-09-5272 MEJ |
| Plaintiffs, | No. C-09-5560 MEJ |
| v. | RELATED ACTIONS |
| JPMORGAN CHASE BANK, N.A., | **ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF UNDER RULE 60(b)(1)** |
| Defendant. | |
| _____/ | (Docket #67 in 09-5272) |
| JOHN ALEXANDER LOWELL, *et al.*, | (Docket #69 in 09-5560) |
| Plaintiffs, | |
| v. | |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant. | |
| _____/ | |

## I.   INTRODUCTION

Plaintiffs[1] filed these related putative class actions against Defendant JPMorgan Chase Bank, N.A., individually and as a successor in interest to Washington Mutual, Inc. On August 10, 2010, the Court dismissed both complaints for lack of subject matter jurisdiction. Currently pending before the Court is Plaintiffs' Motion for Relief under Federal Rule of Civil Procedure 60(b)(1). Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and hereby VACATES the October 21, 2010 hearing. Having considered the parties' briefs and accompanying submissions, relevant legal authority, and good cause appearing, the Court hereby **DENIES** Plaintiffs' motion for the reasons set forth below.

---

[1] For convenience, the Court refers to the plaintiffs in the *Benson* case and the plaintiffs in the *Lowell* case as "Plaintiffs" collectively.

## II. BACKGROUND

As alleged in Plaintiffs' complaints, three nonparties – William Wise, Jacqueline Hoegel, and Kristi Hoegel – were responsible for setting up a Ponzi scheme wherein they offered for sale and sold fraudulent certificates of deposit ("CDs") to Plaintiffs and other innocent investors. More specifically, Plaintiffs allege that Mr. Wise and his associates set up various Nevada limited liability corporations ("Nevada LLCs") and then established Washington Mutual, Inc. ("WaMu") accounts for those companies. Plaintiffs allege that WaMu knew of the underlying Ponzi scheme. As evidence of that knowledge, Plaintiffs allege, *e.g.*, that the bank knew from the face of investor checks being deposited into the Nevada LLCs' accounts that investors thought they were buying CDs from Mr. Wise, his associates, or the Nevada LLCs and, at the same time, also knew that neither Mr. Wise, his associates, nor the Nevada LLCs were in fact registered to sell securities. Plaintiffs also allege that WaMu knew that all of the investor deposits were being commingled in the same accounts and that the investor funds were not being used to purchase any securities but rather were being wired to offshore bank accounts in names other than the Nevada LLCs, or were being used to pay for Mr. Wise and his associates' personal expenses. (Benson Compl. ¶¶ 55, 97; Lowell Compl. ¶¶ 29, 71.)

According to Plaintiffs, WaMu's knowledge of the above came in part from audits that the bank performed prior to the authorization and installation of two remote banking systems for the Nevada LLCs, which enabled Mr. Wise and his associates to make wire transfers to offshore accounts from their offices and also permitted them to deposit investor checks directly from their offices. (Benson Compl. ¶¶ 8, 67, 73, 70; Lowell Compl. ¶¶ 45, 47, 60.) These audits allegedly revealed to WaMu, *inter alia*, the nature of the business conducted by the Nevada LLCs, the industry served by the Nevada LLCs, the financial strength of the Nevada LLCs, the ability of the Nevada LLCs to sell securities, the number of persons employed by the Nevada LLCs, and the number and amount of account debits and credits per month for the Nevada LLCs' bank accounts. (Benson Compl. ¶ 70; Lowell Compl. ¶ 47.)

Starting in July 2004, Plaintiffs allege that WaMu was instrumental in launching the scheme by permitting Mr. Wise to open the fraudulent accounts without any documentation or registration.

Case 3:09-cv-05560-MEJ   Document 73   Filed 10/13/10   Page 3 of 15

(Lowell Comp. ¶¶ 28–29; *see also* Benson Comp. ¶¶ 46 and 48.) Plaintiffs further allege that WaMu "knew that no money was being spent on investments." *Id.* According to Plaintiffs, WaMu purportedly "participate[d] fully in the fraud, including [by] providing both legitimacy and critical banking services to Wise's enterprise that allowed it to thrive and continue defrauding innocent investors for years." (Lowell Comp. ¶¶ 1, 4; Benson Comp. ¶¶ 1, 5.)

According to the Benson Complaint: (a) Plaintiff Neerja Gursahaney purchased a Millennium Bank certificate of deposit in the amount of $4 million in August 2008 (Benson Comp. ¶ 17); (b) Plaintiff Karimdad Baloch purchased a Millennium Bank certificate of deposit in the amount of $119,750 in February 2008 (*id.* ¶ 18); and (c) Plaintiff Kimberly Benson purchased Millennium Bank certificates of deposit totaling $144,000 on May 23, 2006, May 15, 2007, and May 14, 2008 (*id.* ¶ 19).

Plaintiff Lowell does not allege that he purchased certificates of deposit. However, a review of the activity in UTS' account at WaMu reveals deposits of two checks totaling $36,500 executed by a John Lowell made payable to "UT of S/MB" and "UT of S" dated July 23, 2007 and December 21, 2007. (Bowen Decl., Exs. 1, 2.)

In September of 2008, the Office of Thrift Supervision seized WaMu and appointed the Federal Deposit Insurance Corporation ("FDIC") as its receiver pursuant to 12 U.S.C. § 1821(c). (Benson Comp. ¶ 7; Lowell Comp. ¶ 6.) On September 25, 2009, the FDIC, as receiver of WaMu, sold to JPMorgan Chase Bank, N.A. ("Chase") certain of WaMu's assets and liabilities through a Purchase and Assumption Agreement ("PAA"). (Req. for Judicial Notice, Ex. 1, Dkt. #13 in 09-5272.) However, Plaintiffs allege that the Ponzi scheme continued until March of 2009, when the Securities Exchange Commission ("SEC") commenced an action against Mr. Wise and his associates based on the above-described course of conduct. (Benson Compl. ¶ 75; Lowell Compl. ¶ 52.)

In the present cases, Plaintiffs have not sued any of the direct participants in the Ponzi scheme. The federal court in Texas where the SEC action is pending has enjoined private actions against those parties. Instead, they have sued only Chase, individually and as WaMu's successor, on the theory that Chase and WaMu knew of and facilitated the Ponzi scheme.

3

Based on the above allegations, the plaintiffs in the *Benson* case asserted claims for (1) aiding and abetting fraud; (2) aiding and abetting conversion; (3) aiding and abetting breach of fiduciary duty; (4) conspiracy to commit fraud and conversion; and (5) violation of California Business & Professions Code § 17200 ("UCL"). (Benson Compl. ¶¶ 92-127.) Similarly, the plaintiff in *Lowell* has alleged claims for (1) aiding and abetting fraud; (2) aiding and abetting conversion; and (3) violation of § 17200. (Lowell Compl. ¶¶ 66-88.) Plaintiffs brought their claims against Chase as successor in interest to WaMu.

On December 22, 2009, Chase filed motions to dismiss both complaints pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. #12 in 09-5272; Dkt. #14 in 09-5560.) On April 15, 2010, the Court granted in part and denied in part Chase's motions. (Dkt. #43 in 09-5272; Dkt. #50 in 09-5560.) Specifically, the Court dismissed Plaintiffs' conspiracy claim with leave to amend, but denied the motions with respect to the aiding and abetting and UCL claims. *Id.*

On May 18, 2010, Chase filed motions to dismiss pursuant to Rule 12(b)(1), maintaining that the Court lacks subject matter jurisdiction over Plaintiffs' claims. (Dkt. #47 in 09-5272; Dkt. #54 in 09-5560.) In its motions, Chase argued that the Court lacks jurisdiction over Plaintiffs' claims because they relate to alleged acts and omissions of WaMu before it failed and was taken over by the FDIC, relate to the acts and omissions of the FDIC, and seek payment from the assets of the failed bank. Chase contended that any such claims must be brought under the administrative process provided by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), specifically 12 U.S.C. § 1821(d)(13)(D), and that Plaintiffs failed to exhaust their administrative remedies.

In response, Plaintiffs argued that the protections of FIRREA do not extend to Chase since (1) it explicitly accepted the liabilities for the deposit accounts, and (2) FIRREA is designed to protect only the FDIC, against which they assert no claims. Plaintiffs contended that for FIRREA to apply, there must be allegations of impropriety or negligence on the part of the FDIC, and no such conduct is alleged in the instant case. Plaintiffs further argued that Chase cannot prevail because its argument relies on a finding that all of the alleged wrongdoing occurred prior to September 25,

2008, when Chase became WaMu's successor. Plaintiffs contended that this finding is inappropriate at this stage because they allege that Chase's wrongdoing continued until March of 2009.

On August 10, 2010, the Court granted Chase's motions and dismissed both cases. (Dkt. #66 in 09-5272; Dkt. #68 in 09-5560.[2]) As to WaMu, the Court found that Plaintiffs' claims relate to acts and omissions of WaMu as a failed institution under FIRREA because each specific allegation of misconduct occurred in the four years preceding WaMu's failure, starting in 2004 and running through to the bank's seizure in 2008. (SMJ Order at 6:10-13.) Thus, the Court held that Plaintiffs' Complaints presented claims relating to any act or omission of WaMu, over which the Court lacks jurisdiction pursuant to 12 U.S.C. § 1821(d)(13)(D)(ii). *Id.* at 6:23-25. The Court held that the same holds true for Chase because, although Plaintiffs alleged that practices continued after Chase acquired WaMu in September 2008, this assertion fell short of transforming Plaintiffs' claims into something other than claims "relating" to WaMu's alleged misconduct. *Id.* at 6:26-7:7.

The Court also held that, even if it were to find that the Complaints include stand-alone allegations of post-receivership misconduct by Chase, FIRREA still applies. *Id.* at 7:8-9. Specifically, the Court looked to the relevant FIRREA provision, 12 U.S.C. § 1821(d)(13)(D)(ii), which provides that "no court shall have jurisdiction" over the specified claims if FIRREA's claims process is not complied with, including any claim relating to any act or omission of the failed bank. *Id.* at 7:8-8:9. The Court noted that the phrase "relating to" has a deliberately broad and sweeping meaning when used by Congress in a statute, and determined that Plaintiffs could not avoid FIRREA administrative requirements by adding allegations that Chase "continued" WaMu's misconduct. *Id.* (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992).

Finally, the Court held that Chase is not liable to Plaintiffs as a "successor in interest" to WaMu, as Plaintiffs alleged, finding that the plain language of FIRREA bars claims "relating" to the acts of the receiver or seeking the assets of the failed bank, even when those claims are asserted against the third-party purchaser of failed-bank assets from the receiver. *Id.* at 8:10-10:14. As Plaintiffs conceded that Chase was named as the defendant in these actions because it is purportedly

---

[2] For brevity's sake, the Court shall refer herein to the August 10 Order in both cases as "SMJ Order.".)

1  the successor in interest to WaMu and assumed certain assets and liabilities of WaMu, the Court
2  found that Plaintiffs sought to hold Chase responsible for WaMu's alleged misconduct, and their
3  claims therefore relate to alleged acts and omissions of WaMu, are governed by FIRREA, and are
4  barred. *Id.* at 10:9-14.

5  On September 7, 2010, Plaintiffs filed the present motion.[3] (Dkt. #67 in 09-5272; Dkt. #69
6  in 09-5560.) Chase filed its Opposition on September 23, 2010, (Dkt. #68 in 09-5272; Dkt. #70 in
7  09-5560), and Plaintiffs filed their Reply on September 30, 2010 (Dkt. #70 in 09-5272; Dkt. #72 in
8  09-5560)**.**

## III.    LEGAL STANDARD

Rule 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect. . . ." Fed. R. Civ. P. 60(b)(1). With respect to "mistake," a Rule 60(b)(1) motion "may seek relief . . . if the district court has made a substantive error of law or fact in its judgment or order." *Bretana v. Int'l Collection Corp.*, 2010 WL 1221925, at *1 (N.D. Cal. 2010) (citing *Utah ex. Rel. Div. of Forestry v. United States*, 528 F.3d 712, 722-23 (10th Cir. 2008) ("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the judge has made a substantive mistake of law or fact in the final judgment or order.")). Rule 60(b) relief may be granted "only upon an adequate showing of exceptional circumstances." *Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997) (citations omitted);

---

[3] Plaintiffs also filed a Request for Judicial Notice, (Dkt. #67-1 in 09-5262; Dkt.# 69-1 in 09-5560), asking the Court to take notice of the following: (1) Chase's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim in *Pena v. Wells Fargo Bank, N.A., et al.,* U.S.D.C., Southern Dist. of Texas, Houston Div., Case no. 03-45813-H4-13 Chapter 13; and (2) Chase's Memorandum in Support of its motion in the same case. Rule 201(b) provides the criteria for judicially noticed facts: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." As the documents in question are matters of public record, the Court GRANTS Plaintiffs' request for judicial notice. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (A court may take judicial notice of matters of public record outside the pleadings on a motion to dismiss.); *W. Fed. Sav. v. Heflin*, 797 F.Supp. 790, 792 (N.D.Cal.1992) (taking judicial notice of documents in a county public record).

*Massengale v. Oklahoma Bd. of Examiners in Optometry*, 30 F.3d 1325, 1330 (10th Cir. 1994); *United States v. Bank of New York*, 14 F.3d 756, 758 (2nd Cir. 1994).

In a motion based on a Rule 60(b)(1) mistake by the court, the "plaintiff must show that the district court committed a specific error." *Straw v. Bowen*, 866 F.2d 1167, 1172 (9th Cir. 1989) (citing *Thompson v. Housing Authority of the City of Los Angeles*, 782 F.2d 829, 832 (9th Cir. 1986)). To satisfy this standard, "a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, No. 05-4039, 2006 WL 708670, at *2 (N.D. Cal. Mar. 16, 2006) (citation omitted). "'Mere disagreement with the Court's interpretation of the evidence and its opinions' does not warrant reconsideration under Rule 60(b)." *Spieler v. Mt. Diablo Unified Sch. Dist.*, No. 98-0951, 2007 U.S. Dist. LEXIS 47534, at *8 (N.D. Cal. June 20, 2007) (quoting *United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 958 (9th Cir. 2006)); *see also Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.*, 248 F.3d 892, 899 (9th Cir. 2001) (affirming denial of Rule 60(b) motion because the moving party "merely restated its argument" that it had previously raised).

The disposition of a Rule 60(b) motion for relief from judgment is within the sound discretion of the district court. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

## IV.   DISCUSSION

In their motion, Plaintiffs raise the following four arguments: (1) the Court committed unintentional error by accepting Chase's position that FIRREA deprived the Court of subject matter jurisdiction due to Plaintiffs' failure to exhaust administrative remedies, even though Plaintiffs received no notice as required; (2) even if notice had been provided, as a matter of law Chase would not be subject to the jurisdiction of the administrative process which the Court held deprived itself of jurisdiction; (3) the Court erroneously applied the wrong standard by applying a merely facial perspective; and (4) despite long-standing precedent, and in the absence of oral argument or an appearance of any sort, the Court concluded that no amendment would cure its erroneous belief that there was no subject matter jurisdiction. The Court shall consider each argument in turn.

///

**A.   Whether the Court Erred in Finding that it Lacked Subject Matter Jurisdiction, Even Though Plaintiffs Claim They Received No Notice**

First, Plaintiffs argue that before administrative exhaustion requirement can be imposed, FIRREA requires that Plaintiffs receive notice, and that Chase failed to demonstrate notice was provided to Plaintiffs. Plaintiffs further argue that this lack of notice itself illustrates why FIRREA is not applicable to this proceeding, because if the FDIC had authority over Plaintiffs' claims, Chase would have provided them notice.

In response, Chase argues that Plaintiffs' argument is unavailable on a Rule 60(b) motion because they did not raise this argument before the Court's ruling, and they offer no explanation for this failure. Chase contends that, regardless of whether the argument is available on a Rule 60(b) motion, Plaintiffs are wrong because the FDIC provided all the notice that FIRREA requires and, as a matter of law, lack of mailed notice does not relieve Plaintiffs of their obligation to comply with FIRREA's claims process or change the fact that the Court lacks subject matter jurisdiction over their claims.

As a preliminary matter, it is unclear why Plaintiffs argue that the Court committed unintentional error by failing to consider an argument that they did not make in opposition to Chase's motion. Further, Plaintiffs provide no explanation for why this argument was not presented prior to the present motion, and it seems improper to allow Plaintiffs to use a Rule 60(b) motion as an opportunity to re-litigate Chase's motion to dismiss. "Rule 60(b) is not intended to remedy the effects of a deliberate and independent litigation decision." *Sandeford v. Plummer*, 2010 WL 1689184, at *4 (N.D. Cal. Apr. 26, 2010) (citing *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1099 (9th Cir. 2006)).

However, even if the Court were to consider Plaintiffs' belated notice argument, it still fails. Pursuant to FIRREA's notice requirements, the receiver shall "[p]romptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice." 12 U.S.C. § 1821(d)(3)(B). However, the Ninth Circuit has held that the FDIC's "failure to give notice does not render [FIRREA's] administrative claims procedure inapplicable." *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2003) (citing *Intercontinental*

*Travel Mktg. v. FDIC*, 45 F.3d 1278, 1284-86 (9th Cir. 1994)). While FIRREA "make[s] the mailing requirement imperative for the FDIC, the statute imposes no consequence on the FDIC for failure to do so." *Intercontinental Travel*, 45 F.3d at 1284-85. Thus, the Ninth Circuit has held that failure to provide notice does not justify preventing the FDIC from further action. *Id.* at 1285 (citing *Brock v. Pierce County*, 476 U.S. 253, 260 (1986)). "This conclusion is even more compelling because FIRREA's exhaustion scheme serves an important purpose-allowing the FDIC 'to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation.'" *Id.* (quoting *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 396 (3d Cir. 1991), *cert. denied*, 502 U.S. 981 (1991)); *see also Brock*, 476 U.S. at 260 (public interests should not be prejudiced by the negligence of the officers or agents to whose care they are confided); *Freeman v. FDIC*, 56 F.3d 1394, 1402 (D.C. Cir. 1995) ("Even if [Plaintiffs] never received the required [FIRREA] notice . . . they were still obliged to exhaust their administrative remedies as a condition of obtaining access to the district court" and "by failing to do so, deprived the court of jurisdiction."); *Walker v. F.D.I.C.*, 2009 WL 5216980, at *2, 9 (D.N.J. Dec. 29, 2009) ("the FDIC's obligation to give notice to claimants [is not] a prerequisite to a claimant's compliance with FIRREA's mandatory claims process," and thus the "failure to file a timely claim and therefore, exhaust the administrative claims review process is fatal to Plaintiffs' claims against WaMu").

Moreover, as Chase points out in its opposition (and Plaintiffs fail to deny in their reply), it appears that the FDIC did provide the requisite notice. Plaintiffs admit that they were unknown creditors of the failed bank. (Pls.' Mot. 5:20-22, Dkt. #69) All that FIRREA requires for "unknown claimants" is that the FDIC "promptly publish a notice to the depository institution's creditors to present their claims." 12 U.S.C. § 1821(d)(3)(B); *see also Cassese v. Wash. Mut., Inc.*, No. 05-2724, 2010 U.S. Dist. LEXIS 47371, at *23 (E.D.N.Y. May 13, 2010) (holding that the "minimal newspaper advertisement that the FDIC ran is all that FIRREA requires of the FDIC" to unnamed class members). That publication notice was given. *See* http://www.fdic.gov/bank/individual/failed/wamu.html (FDIC press release, issued and published in September 2008).

Thus, the Court finds that it did not commit unintentional error by failing to consider an argument that Plaintiffs did not make. And, even if Plaintiffs had presented the argument, it is without merit. Plaintiffs' motion is therefore DENIED on this ground.

**B.      Whether Chase is Subject to the Jurisdiction of FIRREA's Administrative Process**

Plaintiffs next argue that even if notice had been provided, as a matter of law Chase would not be subject to the jurisdiction of the administrative process which the Court held deprived itself of jurisdiction. Specifically, Plaintiffs argue that an administrative claims process pursuant to FIRREA is created and administered by the Receiver, here the FDIC, and that the FDIC has been appointed as receiver only as to WaMu. As the FDIC has not been appointed as receiver as to Chase, it does not have the authority to set up an administrative process for people to follow to assert claims against the assets of Chase, not does it have the jurisdiction to hear any such claims against the assets of Chase.

In response, Chase argues that Plaintiffs' Complaints are jurisdictionally barred, not because Chase is or is not in receivership, but rather because Plaintiffs' claims are predicated on allegations of misconduct by WaMu and its employees prior to its seizure, and that there is no support in the statute or the case law to limit the broad scope of FIRREA's mandatory claims process because Chase is not in receivership. Chase further argues that Plaintiffs cannot circumvent FIRREA's claims process by choosing to bring a claim within FIRREA against the acquiring bank because their claims relate to the acts of WaMu, and they are therefore required to submit those claims in WaMu's receivership claims process.

Here, as noted above, the allegations in Plaintiffs' Complaints relate to WaMu and Chase's alleged involvement in the Ponzi scheme. However, the only allegation of misconduct by Chase is the general allegation that the "practices continued after [Chase] acquired WAMU in September 2008." (Benson Comp. ¶ 8; Lowell Comp. ¶ 7.) More specifically, Plaintiffs contend that "all of the key WaMu managers and employees who had knowledge of the Millennium Ponzi scheme and aided and abetted its commission . . . remained [Chase] officers and managers for the next six months, until the SEC finally shut down the Millennium Ponzi scheme." (Opp'n at 5.)

In its previous Order, the Court held that the assertion that these employees remained employed after Chase acquired WaMu's assets fell short of transforming Plaintiffs' claims into something other than claims "relating" to WaMu's alleged misconduct. (SMJ Order 7:3-6.) To the contrary, the Court held that this showed that the claims in the Complaints were predicated on alleged misconduct at the failed bank. *Id.* at 6-7. Plaintiffs' current request does not change this holding.

The relevant FIRREA provision entitled "Limitation on Judicial Review" provides that "no court shall have jurisdiction" over "any claim relating to any act or omission of" a failed bank if FIRREA's claims process is not complied with. 12 U.S.C. § 1821(d)(13)(D)(ii). As the Court noted in its previous Order, the phrase "relating to" has a deliberately broad and sweeping meaning when used by Congress in a statute. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) ("The ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer, . . . and the words thus express a broad pre-emptive purpose.'"). For this reason, courts have not allowed a litigant to avoid FIRREA administrative requirements by adding allegations of misconduct by an assuming bank to complaints predicated on the conduct of the FDIC or the failed bank.

In its previous Order, the Court analyzed cases applying FIRREA's jurisdictional bar to claims against assuming banks. (SMJ Order at 7:22-10:8.) Plaintiffs do not address any of the cases analyzed in the Court's previous motion. Instead, as they did in opposition to Chase's motion to dismiss, Plaintiffs cite to *Henrichs v. Valley View Dev.*, 474 F.3d 609 (9th Cir. 2007), and argue that claims regarding any assets or liabilities that were transferred or assigned to a purchasing bank fall outside the administrative claims process set forth in FIRREA.

In *Henrichs*, the court examined the meaning of a separate provision of FIRREA's jurisdictional bar, 12 U.S.C. § 1821(d)(13)(D)(I), which requires exhaustion for claims "for payment from, or any action seeking a determination of rights with respect to, the assets" of a failed bank. *Henrichs*, 474 F.3d at 614. *Hendrichs* arose from a dispute relating to two plots of land, for which one party had obtained a construction loan from Capital Bank of California. *Id.* at 612. The FDIC subsequently acquired the loan when it was appointed receiver of Capital Bank and assigned it and

11

the accompanying deed to other parties, including Henrichs. *Id.* As the result of a dispute related to title over the property, a suit was filed in the Los Angeles County Superior Court, and the court awarded the property to another party. *Id.* at 612-13.

Henrichs subsequently filed suit in federal court, seeking a declaratory judgment voiding the state court order, arguing that FIRREA provided exclusive federal jurisdiction over all of his claims. *Id.* at 613. Because the FDIC had acquired a loan on the relevant property when it was appointed receiver of Capital Bank, Henrichs argued that the state court litigation was improper. *Id.* at 613. The Ninth Circuit disagreed, finding that FIRREA's jurisdictional bar to state court litigation did not apply because the FDIC was not a party to the lawsuit, and it had no interest in the note as it had already been assigned. *Id.* at 614-15.

Here, while it is true that this case is similar to *Henrichs* in that it involves the transfer of assets by the FDIC to a third party, the Court finds that the cases are distinguishable. First, as noted above, *Henrichs* examined the meaning of a separate provision of FIRREA's jurisdictional bar, which relates to claims for payment from or a determination of rights with respect to the assets of a failed bank. *Id.* at 614. The case at bar involves damages related to alleged misconduct by a failed bank, and acts and omissions related to that misconduct. Because the private dispute in *Henrichs* did not involve any alleged misconduct by a failed bank, the court there had no opportunity to consider the scope of this provision. *Id.* at 614-15.

Second, the dispute in *Henrichs* was among private parties and had nothing to do with the transfer of assets from the FDIC. *Henrichs* stands for the proposition that if claims to assets do not relate to the bona fides of the sale by the FDIC, and do not rise or fall on whether the assets once belonged to a failed bank, FIRREA does not apply. *Id.* at 614-15.

Here, as stated in the Court's previous Order, Plaintiffs' claims relate to the acts and omissions of WaMu, and are governed by 12 U.S.C. § 1821(d)(13)(D)(ii). (SMJ Order 6:10-7:7.) As such, there is no merit to Plaintiffs' attempts to avoid FIRREA's claims process. (*See* SMJ Order at 7:22-10:8.) Accordingly, the Court finds that Plaintiffs' claims are within the scope of FIRREA's administrative claims provision. Plaintiffs' motion is therefore DENIED on this ground.

///

**C.     Whether the Court Erred by Assessing the Complaint on a Facial Level**

Next, Plaintiffs argue that the Court erred by assessing their Complaints on a facial level when facts had been submitted by Chase requiring a factual analysis. Specifically, Plaintiffs note that Chase requested that the Court take judicial notice of the PAA between the FDIC and Chase, and the Court erred by accepting the evidence but then not taking judicial notice of the PAA or otherwise failing to amend its analysis and proceed instead with a factual review.

In response, Chase argues that Plaintiffs failed to raise this issue in their motion to dismiss briefing, and that Plaintiffs actually acknowledged that no extrinsic evidence was at issue on that motion. Chase further argues that, even if the Court were to accept Plaintiffs' claim, the parties' dispute was purely legal, and the Court made its determination based on the face of the Complaints without considering extrinsic evidence.

As the "Supreme Court has instructed," it is axiomatic that "lower courts [are] to resolve jurisdictional issues before reaching the merits of a case." *Rivera v. Railroad Ret. Board*, 262 F.3d 1005, 1008 (9th Cir. 2001) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *see also U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 248 (9th Cir. 1995) ("before it can reach the merits of [plaintiff's] claims, the district court will . . . have to consider whether it has jurisdiction"). Such a jurisdictional determination may be made on the face of the pleadings if, accepting the plaintiff's allegations as true, it appears that jurisdiction is wanting, whereas the Court must consider extrinsic evidence only where the motion hinges on whether those allegations are true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Accordingly, where there is merely a legal dispute over the conclusions to be drawn from the plaintiff's allegations, no extrinsic evidence is necessary or appropriate. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (holding that evidentiary determination was not required where defendants argued that allegations in the complaint were insufficient to establish subject matter jurisdiction); *Capitol Leasing v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (rejecting contention that the court erred by failing to conduct evidentiary hearing where the proffered evidence had "little relevance to the question of jurisdiction").

Here, although both parties presented the PAA as part of their motion to dismiss briefing, (Liang Decl., Ex. A, Dkt. #57; Req. for Judicial Notice, Dkt. #49), the Court did not consider it in resolving the jurisdictional issue. The parties dispute was a legal one, which the Court was able to resolve from the pleadings alone. Specifically, the Court determined that, taking Plaintiffs' allegations as true, it had no subject matter jurisdiction because Plaintiffs' claims relate to any act or omission of WaMu, and Plaintiffs had failed to comply with FIRREA's administrative claims process. (SMJ Order at 6:23-25, Dkt. #66.) The Court did not need to resolve conflicting interpretations of the PAA to recognize this, and its previous Order does not analyze any of the terms of the PAA. In fact, Plaintiffs acknowledge that no extrinsic evidence was at issue, and stated that the Court should reach its decision based on a facial analysis of the pleadings. (Pls.' Opp'n at 7:12-17; 18:23-28, Dkt. #57.) Accordingly, the Court finds that a factual analysis was not warranted.

In support of their argument, Plaintiffs cite to three cases in which, Plaintiffs claim, courts engaged in a systematic factual analysis of the relevant PAA as a means of determining whether there was subject matter jurisdiction. In two of the cases – *In re Pena*, 409 B.R. 847 (Bankr. S.D. Tex. 2009), and *Johnson v. Washington Mutual*, No. 09-929, 2010 WL 682456 (E.D. Cal. Feb. 24, 2010) – the courts did not give any consideration to subject matter jurisdiction or FIRREA. Both involved Rule 12(b)(6) motions to dismiss for failure to state a claim. *In re Pena*, 409 B.R. at 849; *Johnson*, 2010 WL 682456, at *2.

In the third case cited by Plaintiffs, *Punzalan v. FDIC*, 633 F. Supp. 2d 406, 414 (W.D. Tex. 2009), the plaintiffs sought to bring claims against Chase as successor to WaMu under a purchase and assumption agreement. Just as here, the court took "no position on the proper construal of the P&A agreement, or on the question of whether Chase Bank has indeed assumed the [plaintiffs'] claims." *Id.* at 414 n.5. Instead, the court rejected the argument that Chase's assumption of certain liabilities could avoid the impact of FIRREA and held that it "lack[ed] subject-matter jurisdiction over those claims due to Plaintiffs' failure to administratively exhaust them in accordance with FIRREA." *Id.* at 415. Here, the Court rejected Plaintiffs' argument for the same reasoning. Thus, *Punzalan* actually supports the Court's prior decision.

Based on this analysis, the Court finds that it properly declined to entertain a factual analysis of the PAA in this case, and Plaintiffs' motion is therefore DENIED on this ground.

**D.      Whether the Court Erred by Denying Plaintiffs Leave to Amend**

Finally, Plaintiffs argue that the Court erred in failing to permit them leave to amend because their claims are not only about misconduct occurring before WaMu's seizure in 2008. Plaintiffs argue that their claims explicitly extend to wrongful acts by Chase after the seizure, and thus contend that the Court should have granted leave to amend pursuant to Rule 15(a).

Rule 15(a)(2) provides that leave to amend a complaint should be freely given "when justice so requires." However, "after final judgment has been entered, a Rule 15(a) motion may be considered only if the judgment is first reopened under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1356 (9th Cir. 1996). Here, final judgment has been entered and, as discussed above, Plaintiffs have failed to establish the circumstances necessary to satisfy the standard of Rule 60(b). Accordingly, Plaintiffs' request for leave to amend in DENIED.

## V.      CONCLUSION

Based on the analysis above, the Court hereby DENIES Plaintiffs' motion for relief pursuant to Rule 60(b).

**IT IS SO ORDERED.**

Dated: October 13, 2010

Maria-Elena James
Chief United States Magistrate Judge